PHILIP ETTINGER, RESPONDENT, v. HENRY A. LOUX, APPELLANT.

Argued June 23, 1921—Decided November 14, 1921.

1. An authorization in writing by an owner of real estate to a broker, to sell the same within thirty days, the owner does not thereby relinquish his right to sell the property himself, independent of the broker; in such a case, the owner is not liable to the broker for commissions.

2. The authorization is not a contract, either express or implied. It is simply a naked revocable power, an offer to pay for services, when rendered, if performed before revocation.

On appeal from the Supreme Court.

For the appellant, *John V. Laddey.*

For the respondent, *Stein, Stein & Hannoch.*

The opinion of the court was delivered by

BLACK, J. In this case the plaintiff obtained a judgment in the trial court against the defendant. The judgment was for commissions alleged to have been earned as a real estate broker. This judgment was affirmed on appeal in the Supreme Court. From the affirmation of the judgment an appeal was taken to this court. The facts from which the cause of action arose are brief. They are not in essentials controverted. The defendant, on September 8th, 1919, owned the premises No. 189 Sixteenth avenue, in the city of Newark, New Jersey. On that day he signed and delivered to the plaintiff a writing, of which the following is a copy:

"Philip Ettinger, Agent.

"I hereby authorize the above to sell my property at 189 16th Ave., at a 3½ per cent. rate, for $11,000.00, or any price above $11,000.00; provided said property is sold by Mr. Philip Ettinger within (30) thirty days from this date in accordance with my provisions of sale mortgage $4,000.

"HENRY A. LOUX.

"Dated 9/8/1919."

On September 13th, 1919, the owner of the property sold the same to a buyer unknown to, and not procured by, the plaintiff; immediately thereafter, the plaintiff was notified that the owner had sold the property, revoking the authorization of the plaintiff to sell.

However, on September 19th, 1919, the plaintiff produced one David Alpert to the defendant, as a purchaser for the property, who was then, in the language of the stipulated facts, ready, able and willing to purchase the property in accordance with the terms of the authorization. The defendant then declined to sell the property to him on the ground that it had been sold. The problem, therefore, for solution is, Did the real estate broker earn a commission? Was the owner by the above writing precluded from selling his own property within the thirty-day period, and so depriving the broker of an opportunity to earn a commission within the limited period? We think the answer to these questions must be "no." The broker did not earn a commission. The owner did not preclude himself from making a sale within thirty days to a purchaser not procured by the broker. The authorization was not an exclusive one, either expressly or by implication. It was said in the case of *Vreeland* v. *Vetterlein,* 33 *N. J. L.* 247, the agent, through whose instrumentality the sale is carried to completion, is entitled to the commissions. An examination of the writing shows that in form it is that of an offer and not that of a contract. There is no consideration which is essential to a contract. It is, in essence, simply a revocable, naked power, an offer to pay for services when rendered if performed within the limited period and before revocation. An examination of our reports does not reveal any case in which this precise point has been considered.

It is an accepted rule of construction that a contract of employment does not give the broker an exclusive agency, unless it is so specified, either expressly or by implication. 19 *Cyc.* 265; 9 *C. J.* 623.

A general rule which is supported by the weight of authority is to the effect that when the owner of real estate places it in the hands of a real estate broker for sale, he does not thereby relinquish his right to sell the property himself independent of the broker (4 *R. C. L.* 318, ¶ 56; 9 *Corp. Jur.* 622); so, it is said, that when the broker is given an exclusive agency, as distinguished from an exclusive right to sell,

it merely precludes the owner from employing another broker and does not preclude the owner from making a sale himself, without the broker's aid, and in such a case the owner will not be liable to the broker for commissions (9 *Corp. Jur.* 622), unless there is a special contract giving a right to commissions regardless of who makes the sale, as in *Kruse* v. *Ferber,* 91 *N. J. L.* 470; *Stevenson Co.* v. *Oppenheimer, Id.* 479; or unless the owner does not notify the broker of the sale, as in *Payne* v. *Twitchell,* 81 *Id.* 193.

The authorities, however, on this vexed question, in the various jurisdictions, are not altogether in harmony. They will be found collected and compared in the notes in 19 *L. R. A.* (*N. S.*) 599; 24 *Id.* 280; 38 *Id.* 370, and 49 *Id.* 999.

The conflict may, perhaps, be more apparent than real, when the different wordings in the broker's written authorization to sell in the reported cases are compared and considered.

Those cases, which make the owner liable for a broker's commissions, when the sale is made by himself within the time limit, are put upon the ground that the written authorization is a contract, that it implies an exclusive right to sell within the time named, without the right of the principal to revoke the agency, unless there is a reservation to the contrary, as in *Blumenthal* v. *Bridges,* 91 *Ark.* 212, 215; 24 *L. R. A.* (*N. S.*) 282.

The revocation of the agency, either directly or by making a sale of the property, is a breach of the contract on the part of the principal, and renders him liable to the agent for damages which the latter sustains thereby.

On the other hand, that class of cases which maintain the opposite doctrine hold that as the broker paid nothing, incurred no expense or loss, and entered into no obligation on his part, the broker was at liberty to act or not as he pleased; and would incur no liability by failing to do anything, as the court said in *Goward* v. *Waters,* 98 *Mass.* 596, the authorization to sell is simply a naked revocable power. It is not a contract, either express or implied.

· There is no mutual obligation to constitute a contract. Nor is there a consideration. So, the writing in this case is simply a naked revocable power. It did not preclude the owner from making a sale of the property himself, without the broker's aid, and did not subject the owner to liability to the broker for commissions. In this case there is no suggestion that the owner did not act in good faith toward the broker by selling his own property to a buyer independent of the broker.

The conclusion we have reached in this case, and the principle on which it is based, find support and illustration in the following cases: *Sibbald* v. *Bethlehem Iron Co.*, 83 *N. Y.* 378, 385; *Cadigan* v. *Crabtree*, 179 *Mass.* 474; 186 *Id.* 7; *Cronin* v. *American Securities Co.*, 163 *Ala.* 533, 539; *Hammond* v. *Mau*, 69 *Wash.* 204.

The judgment of the Supreme Court is reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, PARKER, BERGEN, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, VAN BUSKIRK, JJ. 10.